**In re Anonymous Nos. 101 D.B. 88 and 17 D.B. 89**

GILARDI, *Member,* June 18, 1990—Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with regard to the above-captioned petitions for discipline.

## HISTORY OF PROCEEDINGS

Respondent certified that he was suffering from a disabling addiction, whereupon the Pennsylvania Supreme Court issued an order dated May 29, 1987, placing the respondent on inactive status. Pa.R.D.E. 301(e). The Supreme Court, on March 21, 1988, ordered that respondent remain on inactive status until reinstated by further order of the court.

This matter arises out of two petitions for discipline filed by the Office of Disciplinary Counsel. The first petition, filed on September 29, 1988, contains 30 charges of misconduct. The second petition, filed on February 16, 1989, contains two charges of misconduct. Both petitions aver that the respondent violated numerous Disciplinary Rules of the Code of Professional Responsibility.

The two petitions for discipline were consolidated and heard by Hearing Committee [ ]. Hearings were conducted on May 1, 1989, May 2, 1989 and June 15, 1989. The hearing committee filed its report and recommendations on August 22, 1989. The hearing committee recommended that respondent be disbarred. The matter was adjudicated by the Disciplinary Board on May 24, 1990.

## FINDINGS OF FACT

The Disciplinary Board hereby adopts the following findings of fact of the hearing committee.

(1) Respondent, [ ], is 41 years of age, was admitted to practice law in the Commonwealth of Pennsylvania in 1977 and presently resides in [ ] County, Pennsylvania.

(2) On May 29, 1987, upon consideration of respondent's certificate that he was suffering from a disabling addiction, the Supreme Court of Pennsylvania entered an order directing, in part, that respondent be immediately transferred to inactive status pursuant to Rule 301(e), Pa.R.D.E.

(3) On March 21, 1988, the Supreme Court of Pennsylvania entered an order directing, in part, pursuant to Rule 208, Pa.R.D.E., that respondent remain on inactive status, pursuant to Rule 301(h), Pa.R.D.E., until reinstated by order of the court.

(4) On September 29, 1988, a petition for discipline was filed and docketed at no. 101 D.B. 88, and on February 16, 1989, a petition for discipline was filed and docketed at no. 17 D.B. 89. Both petitions for discipline were consolidated for hearing and the within report and recommendations are with regard to both petitions.

(5) On May 1, 1989, May 2, 1989 and June 15, 1989, hearings took place before the hearing committee assigned to this case.

(6) In the case at no. 101 D.B. 88, 30 separate charges were filed. Evidence was presented in 27 of the charges, and three were withdrawn by the Office of Disciplinary Counsel. Two separate charges were filed at no. 17 D.B. 89, and evidence was presented in both of those charges.

(7) In most, if not all, of the charges, stipulations were agreed to pertaining to the respondent closing his law office and terminating his law practice.

Additionally, at the hearings on May 1 and 2, 1989, testimony was introduced from numerous witnesses that they had not been advised that respondent had closed his law office and terminated his law practice. At the July 15, 1989, hearing (pertaining to the dispositional phase of the case), however, evidence was produced by the Office of Disciplinary Counsel that respondent did notify (or at least attempted to notify) all of his clients of the closing of his law office. Although the testimony had been closed in the case on May 2, 1989, the Office of Disciplinary Counsel, in fairness to the respondent, agreed that the hearing committee should accept that testimony which would negate respondent's alleged violations of failing to notify his clients upon the closing of his law practice. The hearing committee accepted that testimony regarding all of the charges.

### No. 101 D.B. 88

#### Charge I ([A])

(8) On March 10, 1984, respondent represented [A] at a closing concerning the sale of real estate located in [   ], Pa., from [A] to [B] for a sale price of $20,000. At or about that time, attorney [C], representing the lender, [D] Savings Association, and [B], the buyer, gave respondent a check in the amount of $1,500 drawn on [D's] mortgage account.

(9) The check was given to respondent to pay inheritance tax on the estate of [E], who died on December 17, 1983, owning the said property with [A] as joint tenant with right of survivorship. Respondent accepted the said check from Attorney [C].

(10) The original check was lost, and a second check in the amount of $1,500 dated September 9, 1986, drawn on [D's] mortgage account, was for-

warded to respondent for payment of the inheritance tax. The second check was deposited in respondent's business account, which was not a segregated escrow account as described in Disciplinary Rule 9-102(A). On or about September 23, 1987, counsel for respondent issued a check in the amount of $1,500 drawn on respondent's counsel's own account as restitution for the inheritance tax funds entrusted to respondent. Respondent admitted by way of a stipulation that he had been entrusted to maintain the above-mentioned sum inviolate in an identifiable bank account but, instead, deposited the same in his business account which, on numerous occasions and for substantial periods of time from October 29, 1986 until May 17, 1987, was substantially less than $1,500 and, on a number of occasions, had a negative balance. At no time did respondent transfer the said sum into another bank account under his control, but instead used the said funds for his own purposes.

(11) Respondent voluntarily and knowingly committed improper and wrong conduct regarding the funds as set forth above, and his actions violated Disciplinary Rules 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), 7-101(A)(2) and 9-102(A).

## Charge II ([F])

(12) On or about June 5, 1984, [F] retained respondent to represent him in a divorce action and related matter. [F] paid respondent $170 in cash to begin the action which was originally to be a no-fault divorce, but soon became a contested fault divorce. Respondent did a substantial amount of work on behalf of [F], well in excess of the value of $1,000 and believed the conclusion of the case on behalf of [F] was close at hand, but [F] refused to enter a written

agreement to conclude the matter. [F] paid the sum of $500 to respondent, which [F] believed was for the appointment of a master, but which respondent retained as part of his fees towards representation of [F]. [F] requested his file from respondent and was later represented by other counsel.

(13) No violation of disciplinary rules occurred regarding the [F] case as respondent clearly performed legal services on behalf of [F] far in excess of the amounts charged, and the $500 sum given by [F] to respondent was applied toward legal services performed by respondent.

### Charge III (Clients X)

(14) On or about October 2, 1985, respondent was retained by Clients X to represent them in an adoption of a child for the legal fee of $1,000. Respondent later contacted Clients X and requested they pay $3,000 for lost wages and expenses to the natural mother, and Clients X delivered the requested fund to respondent which was to be placed in an interest-bearing account and paid to the natural mother at a later date. When Clients X contacted respondent on numerous occasions to obtain an adoption hearing date, they were given various excuses by respondent or his secretary as to why the hearing was not yet scheduled, including that respondent was having a problem with the judge who would be handling the case. Judge [G] testified that respondent did not present a petition for a hearing date or a request for a preliminary decree which was necessary in an adoption proceeding. Judge [G] also testified that he had no personal animosity toward respondent. Clients X later retained Attorney [H] to represent them regarding the adoption proceeding. Attorney [H] testified she had difficulty contacting

respondent and, having checked the proper dockets, found that no proceeding had been initiated by respondent. Attorney [H] properly completed the adoption proceeding on behalf of Clients X within approximately one month of being retained. Attorney [H] also requested the $3,000 be returned, but instead respondent paid the said sum to one or both of the natural parents. Respondent admitted that he used the $3,000 funds for his own use, then later replaced the said amount before paying the sum out to the natural parents. Judge [G] at a later hearing ordered respondent to return $825 to Clients X as repayment of unused retainer, as well as the sum of $3,000, but respondent never repaid said amounts pursuant to the court order.

(15) Respondent voluntarily and knowingly committed improper and wrong conduct regarding Clients X and, by his action, violated Disciplinary Rules 1-102(A)(4), 1-102(A)(6), 6-101(A)(3) and 9-102(A).

### *Charge IV ([I])*

(16) In or about March 1983, [I] retained respondent to represent her regarding a fall in which she suffered injuries. Respondent agreed to represent [I] on a contingent fee basis. Respondent filed a complaint on behalf of [I], but thereafter transferred the case to another attorney without [I's] knowledge or consent. [I] was later advised by respondent that the other attorney was handling the case and acquiesced in that representation. The other attorney, however, apparently did not adequately represent [I], and [I] recontacted respondent regarding the same. Respondent stated that he would discuss the case with the other attorney and handle it himself if necessary. Several office conferences were scheduled with [I],

but canceled by respondent. In or about the middle of March 1987, respondent closed his law office and terminated his law practice. Respondent did not conclude [I's] case prior to closing his office.

(17) As a result of his actions as set forth above, respondent violated Disciplinary Rules 1-102(A)(6), 6-101(A)(3), and 7-101(A)(2).

## Charge V ([J])

(18) [J] was injured as a result of an accident in October 1982, and retained respondent in the same month to represent her. Respondent agreed to represent [J] on a contingent fee basis, but no written agreement was signed by [J]. In September 1984, respondent had a writ of summons issued on [J's] behalf, but failed to have the writ served. From 1982 through 1987, [J] made numerous phone calls regarding her case and either could not reach respondent, or was reassured by respondent that the case was progressing properly. In about March 1985, respondent delivered [J's] file to another attorney for handling without the knowledge, authority or consent of [J]. Upon learning that the other attorney was handling the case, she contacted the other attorney on several occasions and was told by him that respondent had filed a "wrong paper" and nothing further could be done on her behalf. [J] then contacted respondent and was told he would pursue the action on her behalf. [J] continued to try to contact respondent, but was unable to do so through March 1987, when [J] learned that respondent had closed his law office and terminated his law practice.

(19) The respondent by his actions as set forth above, violated Disciplinary Rules 1-102(A)(6), 6-101(A)(3) and 7-101(A)(1) and (2).

## *Charge VI ([K])*

(20) In or about June 1983, respondent was retained by [K] to represent him in a divorce action which was initially believed to be a no-fault divorce. Respondent filed a complaint in divorce which was not agreed to by [L]. The complaint was amended to a fault divorce. Respondent later charged additional fees to [K] for work being done on [K's] behalf. [K] believed the divorce action was proceeding too slowly and later retained attorney [M] in place of respondent. Attorney [M] contacted respondent on numerous occasions requesting [K's] file, but respondent refused to provide it. Attorney [M] resorted to filing a motion for special relief which resulted in an order directing respondent to provide the [K] file to attorney [M]. Respondent finally relinquished the [K] file to attorney [M] and, upon her receipt of it, attorney [M] found a proposed settlement agreement in the file setting forth a proposal which eventually led to the conclusion of the divorce action. Respondent had failed to advise [K] of the proposal, although it was apparently present in his file in excess of four months prior to the relinquishment to attorney [M]. The value of the legal services performed on behalf of [K] easily justified all fees charged by respondent to [K]. Although attorney [M] advised respondent that she had been retained to represent [K], [K] himself did not advise respondent of the change of representation.

(21) By his actions, the respondent violated Disciplinary Rule 6-101(A)(3).

## *Charge VII ([N])*

(22) [N] retained respondent to represent her in a divorce action filed against her by her husband in

November 1983, and paid total retainers of $450 to respondent. The total fee was not paid to respondent until August 1984. On behalf of [N], respondent filed a statement of expenses and income, an inventory and appraisement, an answer to the divorce complaint, as well as corresponding with [N's] husband regarding various matters. The work done on behalf of [N] continued until as late as December 1986. In March 1987, [N] attempted to contact respondent, but was unsuccessful as respondent had closed his law office and terminated his law practice. Respondent did not return any fees to [N]. [N] later retained another attorney who completed the representation' of her for the additional sum of $50. The legal services performed by respondent on behalf of [N] justified the entire fee paid to respondent.

(23) No disciplinary rules were violated.

## Charge VIII ([O])

(24) [O] retained respondent to represent her regarding child support at an agreed fee. Respondent told [O] he would not begin his representation until the fee was paid. A hearing was scheduled, but [O] had not paid respondent prior to that time, and respondent did not appear on her behalf. [O] later paid respondent his agreed fee, and a second hearing was scheduled, but respondent again failed to show up to represent [O]. [O] requested a return of the retainer, but did not receive the same. Respondent later closed his law office in March 1987, without having properly represented [O] or returning the retainer to her.

(25) As a result of his actions as set forth above, respondent violated Disciplinary Rules 2-110(A)(3), 6-101(A)(3) and 7-101(A)(2).

## Charge IX ([P])

(26) In September 1984, [P] retained respondent to represent him regarding a property damage claim and paid respondent $10 as retainer. No written fee agreement was entered into and respondent told [P] he would collect his apparently undetermined fee upon the settlement of the case. Respondent prepared a rough draft of a complaint, but did not initiate action within the appropriate statute of limitations. On numerous occasions [P] contacted respondent and was told the case was progressing satisfactorily, or that respondent himself would make restitution to [P]. On numerous occasions [P] could not reach respondent and, although leaving messages requesting respondent to return his calls, he did not receive return calls. No action was initiated by respondent on behalf of [P] which would protect [P's] claim. In March 1987, respondent closed his law office and terminated his law practice.

(27) As a result of his actions as set forth above, respondent violated Disciplinary Rules 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), and 7-101(A)(1) and (2).

## Charge X ([Q])

(28) In September 1984 [Q] was injured as a result of a fall and contacted respondent, in February 1985, to represent him. A contingent fee agreement was entered into between respondent and [Q], but no action was taken on behalf of [Q] by respondent within the appropriate statute of limitations. Respondent gave [Q's] file to another attorney without [Q's] knowledge, authority or consent and did not advise [Q] of the same until December 1986. [Q] apparently acquiesced in the other attorney working on the case and believed that both the respondent

and the other attorney were working together. As a result of the failure by respondent to take any action on [Q's] behalf, [Q's] potential cause of action was not adjudicated.

(29) As a result of his actions, respondent violated Disciplinary Rules 1-102(A)(6), 6-101(A)(3) and 7-101(A)(2).

### Charge XI ([R])

(30) On or about February 7, 1985, [R] retained respondent to defend her in an equity action, and paid a $100 retainer to respondent. Respondent failed to file an answer to the complaint, but instead relied on an additional time to file the responsive pleading until [R] received a notice of default. Upon receipt of the notice of default, [R] attempted to contact respondent, but was unable to do so. No answer was filed, and a default judgment was entered against [R]. An execution was undertaken against [R], at which time respondent attempted to open the judgment. [R] was not notified of respondent's attempts to open the judgment. Respondent's motion to open the judgment was denied by the court, and a settlement was entered by respondent on behalf of [R] for the sum of $10,000. [R] did not know about or consent to the aforementioned settlement.

(31) As a result of his actions, respondent violated Disciplinary Rules 6-101(A)(3) and 7-101(A)(2) and (3).

### Charge XII ([S])

(32) Respondent agreed to represent [S] in a no-fault divorce for the sum of $250 in October 1985. Respondent filed a divorce complaint on [S's] be-

half, but [S's] wife filed a counterclaim taking the case out of no-fault. [S] subsequently paid respondent $75 to represent him at a support hearing, but respondent failed to appear at the said hearing. In February 1986, at a conference between respondent and [S], an additional sum of $250 was requested for continued representation, at which time respondent agreed to give credit to [S] of the previously paid $75 toward the additional fee. [S] made payments to respondent toward the additional retainer fee, but the entire balance was never paid to respondent. [S] attempted to call respondent on numerous occasions, but could not reach him, and, although he requested his calls to be returned, respondent failed to do so. In March 1987 respondent closed his law office and terminated his law practice. No portion of the fee paid by [S] to respondent was returned. Some work was done on behalf of [S], but respondent was not sure what work was completed.

(33) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 2-110(A)(3) and 6-101(A)(3).

### Charge XIII ([T])

(34) In November 1985, [T] retained respondent regarding a name change, and paid $20 toward a total quoted fee of $150. Respondent advised [T] he would not take action on her behalf until his fee was paid in full. The entire balance of the agreed fee was paid by [T] to respondent at the end of April 1986. [T] contacted respondent's office on numerous occasions from April 1986 through August 1986, but could not reach respondent and received no calls in return. [T] advised respondent that, if the matter was not properly handled, she would contact the Disciplinary Board or retain another attorney. In

August 1986 respondent advised [T] he would return her fee. [T] wrote to respondent in August 1986, advising him she had retained another attorney and wanted her retainer returned. Respondent then scheduled a hearing and advised [T] of the same. [T] apparently acquiesced in the continued representation by respondent as she attended the scheduled hearing. Respondent was late in arriving at the hearing, but did finally arrive, at which time the name change was completed.

(35) No disciplinary rules were violated.

### Charge XIV ([U])

(36) Respondent was retained by [U] to represent him regarding a landlord/tenant dispute. On December 9, 1985, a hearing was attended regarding that claim, at which time respondent suggested to [U] that a personal injury action be initiated against the landlord. In March 1986 [U] provided respondent with an outline of his claim. Respondent advised [U] at that time that his charges would be $292.50, of which $42.50 would be for costs and the remaining $250 as a fee. [U] contends the fee was not payable until the case concluded, whereas respondent testified that the fee was payable when [U] could get the funds. [U] paid $42.50 to respondent and respondent began work on the file by having another attorney undertake necessary legal research. Apparently, as a result of the lack of action, [U] became dissatisfied with the representation by respondent, and on November 3, 1986, [U] advised respondent's secretary that he intended to retain another attorney to represent him. He requested the return of his file and costs previously paid ($42.50). He received his file, but did not receive any of the $42.50. [U] retained another attorney to represent him. Respondent tes-

tified that he gave the file to another attorney for research, then forgot about it. He admitted he had done nothing to advance [U's] case and that it was not a proper way to run his office. He also admitted that he probably got phone messages from [U], but did not return them. He testified that the failure to return [U's] $42.50 was because he had done at least that much legal work on behalf of [U].

(37) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 6-101(A)(3) and 9-102(B)(4).

### Charge XV ([V])

(38) In February 1986, Mr. and Mrs. [V] retained respondent to represent them in a civil action. On March 3, 1986, the [Vs] paid respondent $250 as retainer. Respondent filed an answer and a counterclaim on behalf of [V]. Counsel for the opposing party filed an answer to the counterclaim, a motion for summary judgment and a brief in support of the same. Argument on the motion for summary judgment was scheduled for May 14, 1986. Respondent contacted opposing counsel well in advance of the argument date and acknowledged that opposing counsel's legal position was correct and he would advise the [Vs] to release the disputed funds. Respondent contacted the [Vs] the day prior to the argument date and advised them their legal position was untenable and that a motion for summary judgment was to be heard the next day. The [Vs] had not been previously advised of the motion for summary judgment. Respondent advised the argument judge's court staff that the case was settled. On the day of the oral argument, opposing counsel appeared, but respondent did not. Respondent testified that he concluded the opposing position was

correct, and so advised the [Vs]. It was his impression that the [Vs] accepted his opinion. Respondent further testified that he did not appear at the summary judgment argument as that would be the quickest and easiest manner of concluding the case, i.e., an unopposed order sustaining the motion for summary judgment on behalf of opposing parties. Although the [Vs] requested a return of their file and retainer, they received neither. The [Vs] testified they did not agree to the "settlement" of their case as advised by respondent. As a result of the summary judgment being sustained, the [Vs] released the disputed funds which were the subject of the lawsuit.

(39) As a result of his actions, respondent violated Disciplinary Rule 6-101(A)(3).

## Charge XVI ([W])

(40) In April 1986 respondent agreed to represent [W] in a civil action to recover money paid as rent to [ ] and [ ] [X]. [W] had paid the [Xs] pursuant to a lease of real estate, but later learned that the [Xs] were not the true owners of the property. An agreed fee of $250 was paid by [W] to respondent to pursue [W's] claim. After the complaint was filed by respondent, a counterclaim was filed by the [Xs], which was answered by respondent. The fee of $250 was originally intended for respondent to pursue [W's] claim, but, when the counterclaim was filed, respondent defended against it. Prior to the conclusion of the case, however, respondent closed his law office and terminated his law practice. Total legal services rendered by respondent to [W] was in excess of the $250 retainer he received.

(41) No Disciplinary Rule was violated.

## Charge XVII ([Y])

(42) On April 14, 1986, [Y] retained respondent to represent her regarding a no-fault divorce. Respondent informed [Y] that his total fee was $160 and that no action would be taken to file the divorce until the entire fee was paid. By February 14, 1987, [Y] had paid respondent $50 toward his fee. By letter dated April 16, 1987, respondent informed [Y] that he had terminated his practice of law and referred her to Attorney [Z] who then had her file. Respondent failed to refund to [Y] the unearned $50, which she had paid him as a fee, or any portion thereof when respondent withdrew as her attorney by terminating his law practice.

(43) As a result of his actions as aforesaid, respondent violated Disciplinary Rule 2-110(A)(3).

## Charge XVIII ([AA])

(44) Charge XVIII was withdrawn.

## Charge XIX ([BB])

(45) Charge XIX was withdrawn.

## Charge XX ([CC])

(46) Charge XX was withdrawn.

## Charge XXI ([DD])

(47) In October 1986 [DD] retained respondent to represent her. Although she was involved in a divorce action, she testified that she did not retain respondent regarding the divorce, but just to get clothes and personal items from her former residence which were in the possession of her estranged

husband. An agreed fee of $165 was paid to respondent. [DD] made numerous calls to respondent, thereafter, and stopped in his office, but could not make contact with him. She was advised by respondent's secretary on one occasion that her file had been lost. Respondent apparently proceeded to act on behalf of [DD] regarding the divorce action, including several letters and conferences with counsel for the estranged husband regarding support and other matters pertaining to the divorce action. No conversations were held between respondent and opposing counsel regarding the clothes and personal items which [DD] claimed. [DD] was not advised by respondent that he was pursuing anything on her behalf, and sometime in approximately December 1986 she asked to have her file returned and her retainer refunded. She received no repayment of the retainer from respondent, as he apparently felt he had earned the fee by representing her regarding the pending divorce action. In April 1987 [DD] was advised by respondent that he had closed his law office, and her file was with another attorney. She retrieved her file from the other attorney. Although [DD] testified she had only retained respondent to represent her regarding limited matters, respondent clearly did legal work on her behalf regarding the divorce action for which he believed he had been retained. That confusion is understandable given the circumstances involved. Respondent, however, had he returned [DD's] calls, would have been made aware of the situation, and could easily have corrected the misunderstanding.

(48) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 1-102(A)(6) and 6-101(A)(3).

## Charge XXII ([EE])

(49) In December 1986 [EE] retained respondent to represent her in a no-fault divorce action as well as related domestic matters. Respondent agreed to represent [EE] for the total sum of $265, which was paid on December 23, 1986. No action was taken by respondent on behalf of [EE]. In March 1987 respondent closed his law office and terminated his law practice. [EE] was advised that her file was in the possession of another attorney. No action was taken by respondent on behalf of [EE], and the retainer was not returned to [EE] by respondent.

(50) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 2-110(A)(3) and 6-101(A)(3).

## Charge XXIII ([FF])

(51) On or about January 7, 1987, [FF] retained respondent to represent him in a divorce action. The agreed fee was $165 which was paid on that date by [FF] to respondent. On numerous occasions, [FF] contacted respondent's office in an attempt to communicate with respondent, but was told that respondent was not in. [FF] left messages for respondent to return his calls, but received none. On April 6, 1987, respondent informed [FF] that he had terminated his law practice. No action was taken by respondent on behalf of [FF], and no portion of the retainer was returned by respondent to [FF].

(52) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 1-102(A)(6), 2-110(A)(3) and 6-101(A)(3).

## Charge XXIV ([GG])

(53) On or about January 13, 1987, [GG] retained respondent to represent him regarding a charge of driving under the influence. On the above-mentioned date, [GG] paid respondent $200 as the total legal fee. Respondent failed to undertake any legal representation on behalf of [GG] and failed to refund any portion of the legal fee. Respondent advised [GG] on April 2, 1987, that his law practice was terminated and referred him to another attorney who had the file.

(54) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 2-110(A)(3) and 6-101(A)(3).

## Charge XXV ([HH])

(55) On or about January 28, 1987, [HH] retained respondent to represent her in a support matter and paid $20 to respondent. Thereafter, [HH] was served with a divorce complaint and retained respondent to represent her in filing an answer to the divorce complaint. On February 20, 1987, [HH] paid respondent $75 toward the balance of his fee to represent her at the support hearing, and $100 as his fee to file an answer to the divorce complaint. Respondent was advised the support hearing was scheduled for March 6, 1987. Respondent did not appear at the support hearing or represent her in any way regarding the support hearing. [HH] advised respondent in writing that she wanted an itemized list of respondent's legal services performed on her behalf, a list of expenses he had incurred on her behalf, and a full refund of the balance of the fees paid to respondent. In March 1987 respondent closed his law office and terminated his law practice. Respondent failed to file an answer to the

divorce complaint on behalf of [HH] and failed to refund any portion of the fees previously paid.

(56) As a result of his actions, respondent violated Disciplinary Rules 2-110(A)(3), 6-101(A)(3), 7-101(A)(1) and (2), and 9-102(B)(4).

## Charge XXVI ([II])

(57) On or about February 14, 1987 [II] retained respondent to represent her in a divorce action and paid $165 to respondent as his total fee. No action was taken by respondent on behalf of [II] to obtain the divorce. On April 6, 1987, respondent advised [II] that he had terminated his law practice and referred her to another attorney. Respondent did not refund to [II] any portion of the legal fee, and took no action on behalf of [II] regarding her divorce.

(58) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 1-102(A)(6) and 2-110(A)(3).

## Charge XXVII ([JJ])

(59) On or about February 9, 1987, [JJ] retained respondent to represent him in a divorce action. On February 26, 1987, [JJ] paid respondent $165 as the total requested legal fee. No action was performed by respondent on behalf of [JJ]. In March 1987 respondent closed his law office and terminated his law practice. No legal work was done by respondent on behalf of [JJ], and respondent failed to refund any portion of the legal fee previously paid.

(60) As a result of his actions as aforesaid, respondent violated Disciplinary Rule 2-110(A)(3).

### Charge XXVIII ([KK])

(61) On or about February 25, 1987, [KK] retained respondent to represent her in a bankruptcy action. An agreed fee of $350 was paid on or about March 12, 1987, but respondent took no action on behalf of [KK] to pursue the bankruptcy. In March 1987 respondent closed his law office and terminated his law practice. No portion of the agreed fee was returned by respondent to [KK].

(62) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 1-102(A)(6) and 2-110(A)(3).

### Charge XXIX ([LL])

(63) On or about March 2, 1987, [LL] retained respondent to represent him in a divorce action and paid respondent $200 as legal fee. In March 1987 respondent closed his law office and terminated his law practice. No action was taken by respondent on behalf of [LL] regarding the divorce action, and no portion of the fee was returned by respondent to [LL].

(64) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 1-102(A)(6) and 2-110(A)(3).

### Charge XXX ([MM])

(65) On or about March 9, 1987, respondent agreed to represent [MM] regarding a bankruptcy action. On March 16, 1987, [MM] paid respondent $270 toward the legal fees. In March 1987 respondent terminated his law practice and referred [MM] to another attorney. Respondent did not file [MM's] bankruptcy action or provide any appreciable legal

services. Respondent also failed to refund any portion of the fee.

(66) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 1-102(A)(6) and 2-110(A)(3).

## 17 D.B. 89

### Charge I

(67) Respondent admitted all allegations contained in paragraphs 5 through 9 of the petition for discipline which are incorporated herein by reference as though the same were herein set forth at length.

(68) As a result of his actions as aforesaid, respondent violated Disciplinary Rule 1-102(A)(6).

### Charge II

(69) On or about May 7, 1986, [NN] retained respondent to represent her in a no-fault divorce for the agreed fee of $180. [NN] initially paid $20 to respondent toward the above-mentioned fee. On May 13, 1986, respondent agreed to represent [NN] in a protection from abuse action against her husband for a total fee of $125 which was paid to respondent. Additionally, [NN] paid the balance of $160 as the balance of the agreed fee regarding the divorce action. Within three days, respondent filed a PFA petition, and, less than two weeks later, respondent filed a divorce complaint on behalf of [NN]. The PFA matter was concluded shortly thereafter, but, since the divorce action was contested, respondent requested an additional fee of $250 which was paid on June 16, 1986. On November 5, 1986, opposing counsel delivered to respondent a copy of a petition for special relief which was to be

presented the next day to the motions judge. Respondent testified that receiving only one day's notice was a violation of the local rule of court, and respondent intentionally disregarded the presentation of the motion for that reason, as he felt the order could later be set aside, or handled in the settlement between the parties which was still to be concluded. For that reason, respondent did not appear at the presentation of the petition. He did not advise [NN] of the presentation of the motion until after the order had been signed by the motions judge. Respondent further testified that the problem created by the presentation of the motion was later agreed to be cleared up during the settlement negotiations between the parties; therefore, no harm was done regarding the presentation of that motion.

(70) On December 18, 1986, opposing counsel hand-delivered a second petition for special relief to respondent's secretary and advised her that the motion would be presented on December 22 to the motions judge. Respondent did not advise [NN] of the second petition and did not show up at the time of the presentation. That second petition was with regard to visitation, and respondent testified that his actions were governed by his experience in similar cases that the motions judge would approve the petition regardless of his opposition to it. Other testimony clearly indicated that the petition was in order, and respondent was correct in his assessment. Respondent, however, failed to notify [NN] of the presentation of the second petition.

(71) In early February 1987 an intense face-to-face negotiation took place between all parties and their counsel. Detailed negotiations took place, and respondent was well prepared to represent his client. Respondent testified that he was only well prepared because he used cocaine earlier that morning which

allegedly heightened his awareness of the matters going on at the negotiating session. At respondent's request, [NN] paid an additional sum of $1,000 to respondent for additional fees incurred regarding his representation of her. A second negotiating session was scheduled for the following week but canceled at respondent's request. No additional negotiation sessions were scheduled, and in March 1987 respondent closed his office and terminated his law practice. [NN] retained new counsel to represent her, and, although no formal hearings took place thereafter, the case was eventually concluded. [NN] paid $3,000 to her new counsel for representation. Respondent did not refund any portion of the previously collected $1,430 to [NN].

(72) Throughout his representation of [NN], respondent performed a substantial amount of work which may well have been valued in excess of $1,430. Note must be taken of the fact that, although it appears a majority of the legal work was completed by respondent on behalf of [NN], her second counsel's fees were more than twice the fee charged by respondent. The fees charged by respondent were reasonable and earned by him, even though he did not conclude [NN's] case prior to terminating his law practice.

(73) As a result of his actions as aforesaid, respondent violated Disciplinary Rules 1-102(A)(6) and 6-101(A)(3).

## DISCUSSION

Respondent was an All-American college wrestler, a high school teacher, and graduated from law school with honors in 1977. (Notes of Testimony 695-6.) He began to use cocaine in 1980 (N.T. 684), and became addicted to the drug in 1982. (N.T. 700.)

He actively used cocaine until April 10, 1987, when he entered [OO] Rehabilitation Center. (N.T. 684.) He thereafter participated in six months of outpatient therapy in [    ], and now counsels with his fiance who is a drug counselor. (N.T. 684-5.) He has not used drugs since April 10, 1987. (N.T. 716.)

Respondent's period of active drug addiction can be characterized as a nightmare. In 1983, he had a stroke while using cocaine, but went right back to using after he was discharged from the hospital. (N.T. 703-4.) He deteriorated physically and psychologically. He lost weight, became dehydrated, and became paranoid. (N.T. 710-2.) He lost his assets, his profession, his family, and his health. In short, he lost everything. (N.T. 715.)

Respondent was desperate, and his desperation led him to [OO] and to his eventual rehabilitation.

As was previously pointed out, respondent was addicted to cocaine from 1982 until April 10, 1987. It was during the period of 1982 to 1987 that the respondent committed the 29 code violations that we deal with herein.* Respondent's misconduct included: commingling and personal use of client funds; acceptance of fees and subsequent failure to perform legal services; refusal to refund unearned fees to clients; refusal to communicate with clients; misrepresenting the status of legal matters to clients; neglect of entrusted legal matters; intentionally failing to carry out contracts of employment entered into with clients; and refusing to return files to clients. Respondent violated the following Disciplinary Rules: 1-102(A)(4); 1-102(A)(6); 2-110(A)(3); 6-101(A)(3); 7-101(A)(1); 7-101(A)(2) and (3); 9-102(A);

---

* Three charges were withdrawn by the Office of Disciplinary Counsel.

and 9-102(B)(4). In summary, the respondent engaged in a widespread and persistent pattern of code violations.

Review of Supreme Court and board decisions persuades us that the respondent's misbehavior warrants a recommendation of the most severe sanction—disbarment—unless sufficient mitigating factors impinge on our decision. See *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989). Disciplinary Counsel urges that disbarment is the appropriate sanction based upon the serious and multiple breaches that are involved in this case. Office of Disciplinary Counsel's memorandum to Hearing Committee [   ] at 24.

It is clear that the respondent suffered from a cocaine addiction; however, "it is not enough to say that an offender is a [cocaine addict] and ipso facto causation is proven." *In re Kersey,* 520 A.2d 321, 325 (D.C. Cir. 1987).

Respondent attempted to establish a causal connection between his addiction and his misconduct through the expert testimony of a certified addictions counselor. In determining the weight to be given to the expert's testimony, the relationship between the expert and the respondent must be considered. Respondent's expert witness was his fiance, with whom he lives. Given the personal relationship between the respondent and his expert witness, the hearing committee did not find the expert's testimony to be reliable or persuasive. See hearing committee report at 26. We have carefully scrutinized the record, and we are satisfied that the triers of fact properly evaluated the respondent's expert testimony. This record does not support a finding that respondent's cocaine addiction was a

factor in causing his egregious conduct. Accordingly, we must recommend that the respondent be disbarred.

In passing, it should be noted that respondent argues that favorable consideration should be given to him in recommending discipline because he voluntarily entered into a drug-treatment program. Development of an attitude of rigorous honesty is fundamental in the treatment process for any kind of drug addiction. Respondent confronted his drug addiction, entered a rehabilitation program, and rebuilt his life. We commend the respondent for his rehabilitation efforts, but evidence of his voluntary rehabilitation is not a substitute for proving the requisite causal connection between his cocaine abuse and his misconduct.

Respondent also argues that a recommendation of disbarment in this case would have a chilling effect on other drug dependent lawyers who are considering voluntary rehabilitation. We recognize that attorneys are not immune from the dangers of drug addiction. We send no ominous message in this decision to lawyers who are contemplating treatment for a drug problem. We encourage those lawyers to seek rehabilitation. Early acceptance and treatment of a drug problem may well promote rehabilitation of a drug dependent lawyer, avoid disbarment, and prevent injury to the public. Simply put, an attorney with a drug problem does not seek help at his peril.

## RECOMMENDATION

Based on the foregoing discussion, the Disciplinary Board recommends that respondent be disbarred from the practice of law. It is further recommended that the court direct the respondent to pay

all necessary expenses incurred in this proceeding pursuant to Rule 208(g)(2), Pa.R.D.E.

Ms. Heh did not participate in the adjudication.

## ORDER

And now, September 6, 1990, upon consideration of the report and recommendations of the Disciplinary Board dated June 18, 1990, it is hereby ordered that [respondent], be and he is disbarred from the bar of this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.